**UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| PUBLIC SERVICE COMPANY OF OKLAHOMA, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | )   Case No. 07-CV-0707-CVE-SAJ ) |
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS, LOCAL UNION NO. 1002, | ) ) ) ) ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court is plaintiff's Complaint to Vacate Arbitration Award (Dkt. # 2).[1] Plaintiff Public Service Company of Oklahoma ("PSO") asks the Court to vacate a decision by an arbitrator ordering PSO to reinstate Kerry Byassee ("Byassee") to his position as a foreman for a construction line crew in Idabel, Oklahoma. PSO argues that the arbitrator should have refrained from reaching the merits of Byassee's grievance because his demand for arbitration was untimely. It also argues that the arbitrator's decision fails to draw from the essence of the parties' agreement and exceeds her authority.

**I.**

Byassee was employed by PSO for twenty-six years and he was a member of the Union. He was terminated on April 13, 2006 for insubordination and other safety violations, and this event was

---

[1] Defendant International Brotherhood of Electrical Workers, Local No. 1002 ("the Union") has filed a motion to confirm arbitration award (Dkt. # 16), but the Court ordered the parties to submit briefing directly on plaintiff's complaint. The Court's ruling on the complaint will resolve all issues; thus, defendant's motion is moot.

the culmination of a history of disciplinary problems and difficult relationships with his superiors. Kenny Williams ("Williams"), Byassee's supervisor for approximately one year during 1996 and 1997, testified that Byassee "would become upset sometimes with some management decisions or decisions that [Williams] had to make in reference to crew regards but it was just coaching." Dkt. # 24-4, at 15. Williams did not fault Byassee's work ethic, but he noted that Byassee expressed frustration with Williams' work assignments. Byassee testified that he had a "unique relationship" with a subsequent supervisor, Bob Daniels ("Daniels"), and they had some "fairly big confrontations from time to time." Id. at 44. Byassee characterized his relationship with Daniels as friendly, but admitted that he and Daniels would use rough language with one another.

Daniels retired in April or May 2001, and Byassee's new supervisor was Guy Duerson ("Duerson"). Byassee immediately had difficulty working with Duerson, and he characterized his working environment under Duerson as hostile. Id. at 45. Byassee claims that he had communication problems with Duerson throughout their working relationship, but Duerson did not formally discipline Byassee until February 2004. On February 19, 2004, Byassee received a disciplinary warning for unauthorized use of company equipment and disrupting meetings with the use of inappropriate language. Dkt. # 24-8, at 14. PSO advised Byassee to take corrective measures and that any future disciplinary action would be more severe. Id. On March 9, 2005, PSO suspended Byassee for two days without pay and ordered him to attend an anger management program because Byassee "inaccurately compiled a timesheet; [was] absent from the job site without permission of [his] supervisor; used abusive, threatening and profane language towards co-workers; displayed acts of aggression and intimidation toward co-workers; and abused company equipment and tools." Id. at 17. PSO advised Byassee that his job performance was unacceptable and future

disciplinary violations could result in his termination.[2] Id. ("Your unacceptable job performance and behavior are serious concerns that have placed your employment in jeopardy."). On January 26, 2006, Byassee was suspended for three days without pay for violating PSO's safety policy on two separate occasions. Specifically, Byassee had an avoidable vehicle accident on January 19, 2006, and a member of his crew suffered an avoidable personal injury on January 23, 2006. Id. at 18.

On December 12 and 13, 2005, PSO sent an investigator, Deborah Arwood ("Arwood"), to Idabel to review the termination of another PSO employee, Clifton Owens ("Owens"). Owens allegedly made a threatening statement to Duerson on December 7, 2005, and he was terminated immediately.[3] Arwood examined the general atmosphere of the workplace and discovered a great deal of hostility in the workplace. She discovered that employees frequently left work early and engaged in disruptive behavior, and Byassee was the "ringleader." Id. at 9. On one occasion, Byassee told a co-worker that he would "kill [Duerson] by shooting him between the eyes if [he] wouldn't suffer the consequences." Id. at 8. Arwood summarized her findings about the workplace as follows:

> Although I have not been involved in previous complaints [at Idabel], I am aware that they have gone on for years. Primarily, the greatest conflict is between [Duerson] and two of his direct reports, [Byassee and Owens]. [Byassee and Owens] have spoken openly about wanting Guy out of there.

---

[2] In March 2005, PSO's human resources department received two complaints about Byassee's behavior from co-workers, and sent Derek Llewellen, Manager of Distribution for the McAlester District, and Deborah Williams, Human Resources Advisor, to investigate the complaints. Dkt. # 23-7, at 21. The findings of this investigation led to Byassee's suspension and referral to anger management classes on March 9, 2005.

[3] Owens stated that he would "kill [Duerson] by shooting him between the eyes" if he knew that he wouldn't get caught. Dkt. # 24-10, at 6. Arwood confirmed that Owens made this and other similar statements about Duerson.

3

> The previous supervisor, Bob Daniel, and [Byassee's] wife, also an employee, had an affair. As a result, [Byassee] thought he could control [Daniel] by threatening to tell the company about the affair if [Daniel] didn't let [Byassee] do what he wanted. When [Duerson] took the supervisor position, he directed the work and held employees accountable for their performance. He expected employees to work an eight-hour day. His supervision was different than what they were used to and some of the employees didn't like the control or authority. [Byassee] could not control his new supervisor.
>
> A major portion of each interview had to do with [Byassee's] erratic behavior and ranting and raving inappropriately. Employees want to avoid him and the conflict he creates at all costs. Several said that they had a calm workplace until [Byassee] came to their dock. They are tired of his profanity, desire to goof off, stretching out work, and quitting work early in the day when there is still work to be done. Their greatest frustration is that he has not been terminated.
>
> . . .
>
> I am concerned that employees are making career decisions (to leave that area or move to a job that doesn't have contact with [Byassee]) based on Byassee's behavior.

Id. at 16.

PSO terminated Byassee's employment on April 13, 2006, because Byassee (1) left company material at unsecured worksite without authorization; (2) authorized a non-company employee to install electrical service; and (3) violated company policy by hooking up electrical service without prior authorization. Dkt. # 24-7, at 23. PSO found that Byassee ignored direct orders from management and left two reels of wire at a worksite without permission from Duerson. At this same worksite, Byassee authorized non-PSO employees to lay underground wire without PSO employees present. This could not have occurred if Byassee had followed company policies by storing the wire appropriately. Byassee admitted that he connected service at 201 NW Martin Luther King Boulevard in Idabel, Oklahoma ("MLK address") without a work order, but he claimed that the customer showed him a receipt for full payment of his outstanding bill. However, PSO procedures

4

require a valid work order before hooking up electricity to a residence, and Byassee acknowledged that PSO had not authorized him to connect the MLK address. All of these actions constituted serious violations of PSO's rules and, based on this and prior misconduct, PSO terminated Byassee's employment.

As a member of the Union, Byassee's employment and PSO's discipline of Byassee was subject to the collective bargaining agreement ("CBA") between PSO and the Union. Under the CBA, PSO retained "[a]ll the rights, authority and flexibility . . . to manage its business which existed prior to the execution of this agreement . . . ." Dkt. # 24-6, at 6. The CBA expressly provided that PSO retained "[t]he right to discipline, suspend, or discharge employees for just cause." Id. The CBA provided a grievance procedure for any employee who was dissatisfied with disciplinary action by PSO. In situations when an employee is challenging a termination, the parties proceed immediately to step 3 of the grievance procedure. At step 3, the grievant is entitled to a hearing on his written grievance before the appropriate company director or vice president. Id. at 8. If an employee's grievance is denied at step 3, he or she must file a written request for arbitration within 14 days of PSO's denial of the employee's grievance. Id. The CBA states that the "decision of the Arbitrator shall be final and binding on all parties," but the CBA places certain limits on an arbitrator's authority. Id. An important limitation is that "[t]he Arbitrator shall only deal with the grievance or grievances which occasioned his appointment. The Arbitrator shall have no power to add to, subtract from, or modify the terms of this Agreement." Id. at 9. The CBA is clear that failure to comply with the deadlines at any step of the process "shall invalidate the grievance." Id.

Byassee filed a grievance protesting his termination, and the parties did not reach a resolution during the grievance process. PSO issued its final decision denying Byassee's written

5

grievance on May 30, 2006, and the Union had 14 days to submit a written request for arbitration. However, the Union did not submit its request for arbitration until June 15, 2006. Tim Bowmar ("Bowmar"), PSO's Labor Relations Manager, immediately contacted the Union's business manager, Mike Cannon ("Cannon"), to ask why the demand for arbitration was filed one day late. Dkt. # 24-9, at 12-13. Cannon responded that he miscalculated the dates for Byassee's grievance, and he asked PSO to waive any objection to the timeliness of Byassee's grievance. Bowmar did not initially respond to Cannon's request to waive the untimeliness of the Union's demand for arbitration. Several months later, Bowmar and Cannon discussed whether PSO would raise timeliness as a defense to Byassee's grievance. Bowmar confused Byassee's grievance with a separate grievance filed by Owens, and Bowmar mistakenly told Cannon that PSO would waive the untimeliness of Byassee's demand for arbitration. Dkt. # 23-8, at 12. Bowmar realized his mistake later that same day, and called Cannon to inform him that PSO would exert a timeliness defense to Byassee's grievance. However, Bowmar acknowledged that there was a mutual agreement to waive the timeliness issue for part of one day. Id. at 14-15. The parties proceeded to arbitration, and PSO asserted that Byassee' grievance should be dismissed because the Union's demand for arbitration was untimely.

The arbitrator, Carol Kyler ("Kyler"), found that she was faced with two issues:[4]

1. Is the grievance arbitrable?

2. If so, did the Company have just cause to issue the Grievant the Notice of Termination on April 13, 2006? If not, what is the proper remedy?

---

[4] The arbitrator's statement of the issues in her opinion differs from the issues agreed upon by the parties at the beginning of the arbitration hearing, and the Court is not adopting the arbitrator's statement. There is a significant issue as to the second issue, which will be discussed below. See infra, III(B).

6

Dkt. # 25-3, at 2. Kyler found that the dispute was arbitrable because PSO waived any objection to the timeliness of the Union's demand for arbitration. The arbitrator found that the Union's demand for arbitration was untimely by one day, and PSO initially informed the Union it would object on the basis of untimeliness. However, she relied on two factual findings to support her conclusion that PSO intended to waive any objection to the timeliness of the Union's demand for arbitartion. First, she found that PSO agreed to extend the time limits in almost all cases when a request is made before the applicable deadline expires and, in at least one case, PSO agreed to extend a deadline after it had expired. Id. at 3. Second, she found that the parties had a mutual agreement for a brief period of time to resolve the grievance on its merits, even if the Union's demand was untimely, and this agreement was sufficient to waive PSO objection to the timeliness of the Union's demand.

Turning to the merits of Byassee's grievance, Kyler concluded that the factual allegations in PSO's notice of termination were accurate. She examined the alleged misconduct in PSO's notice of termination, and found that each of the three charges was factually supported. Consequently, she determined that PSO had just cause to discipline Byassee. Id. at 9 ("The Grievant's misconduct was both 'willful and deliberate,' representing a repudiation of his supervisor's authority and, thereby, constituting insubordination and providing 'just cause' for the imposition of disciplinary action."). However, she believed that PSO's pattern of lesser disciplinary action did not put Byassee on notice that he would be fired for his repeated misconduct. Kyler wrote:

> The standard of anticipated stiffer penalties, as contemplated in the application of progressive, or corrective discipline, works only as long as it is applied consistently. A written warning, followed by only a 2-day and 3-day suspension for the Grievant's repeated and continued egregious misconduct represents, in this [sic] opinion, nothing more than a "slap on the wrist" and vitiates the benefit of escalated penalties as a deterrent for future infractions which had the potential of leading the Grievant,

7

> in this case, into a false sense of security that in the future he would escape a more severe penalty short of discharge, despite the fact that in each of the disciplinary actions issued, he was warned that failure to take corrective action would result in further disciplinary action being taken, up to and including termination.

Id. at 11. Kyler ordered that PSO immediately reinstate Byassee to his former position as a line crew foreman, but she denied Byassee's request for backpay. PSO provisionally reinstated Byassee's salary on November 19, 2007, but did not permit him to return to work.[5]

## II.

The parties dispute whether plaintiff's claim should be reviewed under the Federal Arbitration Act, 9 U.S.C. § 1 et seq. ("FAA"), or Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185 ("LMRA").[6] PSO argues that the Court's review of arbitration pursuant to a collective bargaining agreement is governed by the LMRA rather than the FAA. However, the dispute over which statute governs the standard of review is largely irrelevant because, as PSO points out, it has not raised any arguments under the FAA. A complaint to vacate an arbitration award based on the arbitrator's non-compliance with the "essence of the agreement" is proper only in cases such as this, where the arbitration award was issued pursuant to a collective bargaining agreement. Westerbeke Corp. v. Daihatsu Motor Co., Ltd., 304 F.3d 200 (2d Cir. 2002). PSO has

---

[5] The parties have filed a Joint Stipulation of Temporary Continuation of Payment (Dkt. # 27), by which PSO agrees to pay Byassee's salary while this case is pending. However, PSO has not permitted Byassee to resume his employment. This agreement will expire after the Court issues its decision on the merits of PSO's claim to vacate the arbitration award, and the parties have stipulated that either party "may pursue appropriate relief with respect to the temporary continuation of payment" on appeal. Id. at 1.

[6] PSO faults the Union for citing cases applying the FAA, rather than the LMRA, in discussing the standard of review. Dkt. # 32, at 1-2. However, PSO relies on the FAA in its complaint as a basis to vacate the arbitration award and it did not cite the LMRA in its opening brief. See Dkt. # 2, at 5 ("The Arbitrator exceeded her authority in violation of the Agreement and the Federal Arbitration Act, 29 U.S.C. § 10 . . . .).

8

limited its arguments to the substantive body of federal law concerning review of arbitration awards issued pursuant to collective bargaining agreements, and the Court will limit its review accordingly.

Review of PSO's complaint to vacate the arbitration award is limited to a consideration of whether the arbitrator's decision fails to draw from the essence of the agreement, and the Court will not reinterpret the agreement or vacate the arbitrator's decision based on a disagreement with her construction of the agreement. The Tenth Circuit has clearly stated that federal courts "lack the authority to review whether the arbitrator rightly or wrongly decided the matter and can only examine whether the arbitrator's decision 'draws its essence from the agreement.'" Hermanns v. Albertson's, Inc., 203 Fed. Appx. 916 (10th Cir. 2006) (quoting Pub. Serv. Co. of Colorado v. Int'l Bhd. of Elec. Workers, Local Union No. III, 902 F.2d 19, 20 (10th Cir. 1990)); see also United Steelworkers of America v. Enterprise Wheel & Car Corp., 363 U.S. 593, 599 (1960) ("It is the arbitrator's construction which was bargained for; and so far as the arbitrator's decision concerns construction of the contract, the courts have no business overruling him because their interpretation of the contract is different from his."). The arbitrator's decision will be vacated only if:

> it is contrary to the express language of the contract or is so unfounded in reason and fact, so unconnected with the working and purpose of the agreement as to manifest an infidelity to the obligation of the arbitrator or if viewed in the light of its language, its context, and any other indicia of the parties' intention, it is without rational support.

LB&B Associates, Inc. v. Int'l Bhd. of Elec. Workers, Local No. 113, 461 F.3d 1195, 1197-98 (10th Cir. 2006) (quoting Local No. 7, United Food & Commercial Workers Int'l Union v. King Soopers, Inc., 222 F.3d 1223, 1227 (10th Cir. 2000)).

Regardless of whether the Court applies the FAA or the LMRA, the scope of the Court's review is extremely narrow. The arbitrator's decision will be overturned only if it is "contrary to

9

the express language of the contract" or "without rational support." Mistletoe Exp. Serv. v. Motor Expressmen's Union, 566 F.2d 692, 694 (10th Cir. 1977). This standard of review is "among the narrowest known to the law" and the Court must "enforce an award which 'draws its essence from the collective bargaining agreement.'" Litvak Packing Co. v. United Food & Commercial Workers, Local Union No. 7, 886 F.2d 275 (10th Cir. 1989) (quoting United Steelworkers, 363 U.S. at 597). Although an arbitrator's award should not simply "reflect the arbitrator's own notions of industrial justice[,] . . . [a]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority, that a court is convinced he committed serious error does not suffice to overturn his decision." United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 38 (1987).

### III.

PSO challenges the arbitrator's award on three bases. First, PSO argues that the arbitrator should not have reviewed the merits of Byassee's grievance, because his demand for arbitration was untimely. Second, it asserts that the arbitrator lacked authority to consider the remedy imposed by PSO, because the arbitrator concluded that PSO had just cause to discipline Byassee. Third, PSO claims that the arbitrator's award should be vacated, because she used her authority to dispense her own brand of industrial justice.

### A.

PSO vigorously argues that the arbitrator erred by proceeding to the merits of Byassee's grievance when it was clear that his demand for arbitration was untimely. The Union argues that PSO has waived judicial review of its timeliness argument by submitting this claim to the arbitrator

or, in the alternative, that the Court should apply a deferential standard of review to the arbitrator's decision on this issue.

The Court's finds that PSO has not waived its argument concerning the timeliness of the Union's demand for arbitration. However, the Court does not review PSO's argument under a <u>de novo</u> standard. Matters of procedural arbitrability, such as compliance with time limits in the collective bargaining agreement, should be decided by the arbitrator in the first instance, but this does not entirely preclude subsequent judicial review of these issues. <u>Interstate Brands, Corp. Butternut Bread Div. v. Chauffeurs, Teamsters, Warehousement and Helpers Local Union No. 135</u>, 909 F.2d 885, 890 (6th Cir. 1990); <u>Denhardt v. Trailways, Inc.</u>, 767 F.2d 687, 690 (10th Cir. 1985). The Tenth Circuit has stated that:

> [j]ust as the arbitrability of the merits of a dispute depends upon whether the parties agreed to arbitrate that dispute, so the question "who has the primary power to decide arbitrability" turns upon what the parties agreed about that matter. Did the parties agree to submit the arbitrability question itself to arbitration? If so, then the court's standard for reviewing the arbitrator's decision about that matter should not differ from the standard courts apply when they review any other matter that parties have agreed to arbitrate.

<u>Kennecott Utah Copper Corp. v. Becker</u>, 186 F.3d 1261, 1266 (10th Cir. 1999) (quoting <u>First Options of Chicago, Inc. v. Kaplan</u>, 514 U.S. 938 (1995)). This standard of review applies to matters of procedural arbitrability whether the Court is reviewing an arbitration award under the FAA or the LMRA. <u>See</u> <u>Id</u>. at 1268 n.3. Therefore, PSO has not waived its argument concerning the timeliness of the Union's demand for arbitration, but the Court will review the arbitrator's decision under a deferential standard of review.

The arbitrator found that PSO and the Union had a mutual agreement to waive the untimeliness of the Union's demand for arbitration. She found that the temporary agreement

11

between Bowmar and Cannon was a mutual agreement, even if only for a short time, to waive the procedural defect with Byassee's grievance. Dkt. # 25-3, at 4. She cited Bowmar's testimony that "based on [his] mistake, for at least a small moment of time, there was a mutual agreement." Id. PSO had also agreed to extend a deadline in another employee's grievance procedure after the applicable deadline had expired, and this showed that PSO did not always require the Union to request an extension before the expiration of a deadline. Although there was no dispute that the Union's request for arbitration was untimely, the arbitrator concluded that:

> the evidence is sufficient to support a finding that although the Union's appeal of the instant grievance to Step 5, arbitration, was untimely, because there was a mutual agreement between [PSO] and the Union to waive the timeliness issue, the grievance is not procedurally defective, and, thus, is proper for resolution in these proceedings.

Id.

PSO argues that the arbitrator exceeded her authority by proceeding to the merits of the grievance, because the facts clearly showed that the temporary mutual agreement was the result of a mistake by Bowmar. PSO asserts that Bowmar immediately notified the Union of his mistake and there was no intention to enter a mutual agreement to waive the timeliness issue. Instead, PSO argues, the Union's use of the alleged mutual agreement is nothing more than a "gotcha," and the Union was aware at all times that PSO intended to object to Byassee's grievance on the basis of timeliness. Dkt. # 24-5, at 20. The Union responds that PSO's unilateral mistake can not be used to void the mutual agreement between the parties. The Union also argues that the arbitrator's decision was consistent with her authority under the CBA and was supported by reference to the record, and her award should not be vacated on this basis.

The Court will not disturb the arbitrator's finding that PSO waived its objection to the timeliness of the Union's demand for arbitration, because it is supported by the facts and is not

wholly without rational support. The arbitrator cited testimony from Bowmar and Cannon that showed that a mutual agreement, even if temporary, existed and during the pendency of that agreement the Union was not aware of PSO's mistake. "When deciding whether the parties agreed to arbitrate a certain matter (including arbitrability), courts generally . . . should apply ordinary state-law principles that govern the formation of contracts." First Options of Chicago, 514 U.S. at 944. Under Oklahoma law, a unilateral mistake by one party to a contract does not void a contract unless the other party was aware of the mistake. Scrivener v. Sonat Exploration Co., 242 F.3d 1288, 1293 (10th Cir. 2001); Fender v. Wal-Mart Corp., 341 F. Supp. 2d 1193, 1196 (N.D. Okla. 2004). PSO has not identified any evidence in the administrative record showing that the Union was aware or should have been aware of Bowmar's mistake at the time he entered the agreement. Given the arbitrator's finding that PSO had previously waived a procedural defect after a deadline had expired, the Union could have reasonably relied on Bowmar's representation as a waiver of the timeliness issue. The arbitrator concluded that a mutual agreement existed, even if this agreement was the result of a unilateral mistake, and her decision to uphold this agreement was not without rational support.

No matter how temporary the agreement may have been, the arbitrator had a sufficient factual basis to find that PSO agreed to waive the untimeliness of the Union's demand for arbitration. Even if the Court were to determine that the arbitrator's factual finding of a mutual agreement was in error, this would not permit the Court to vacate the arbitrator's decision unless the arbitrator showed a manifest disregard for the law. Denver & Rio Grande Western R. Co. v. Union Pacific R. Co., 119 F.3d 847, 849 (10th Cir. 1997) ("Errors in either the arbitrator's factual findings or his interpretation of the law (unless that interpretation shows a manifest disregard of controlling

13

law) do not justify review or reversal on the merits of the controversy."). Essentially, PSO asks this Court to replace its judgment for that of the arbitrator and, under the narrow standard of review of arbitration awards, the Court must defer to the arbitrator's decision except in rare circumstances. The arbitrator's decision to proceed to the merits of the grievance will not be vacated.

**B.**

PSO raises a serious issue as to whether the parties authorized the arbitrator to review the type of discipline imposed by PSO if she determined that just cause existed, and PSO argues that the arbitrator exceeded the scope of her authority by considering this issue. PSO asserts that it did "not agree to submit the question of an 'appropriate remedy' to arbitration or grant the Arbitrator the right to modify the level of discipline." Dkt. # 29, at 18. Defendant admits that the arbitrator did not have authority to modify the discipline imposed if PSO had just cause to discipline Byassee. However, defendant argues that "the arbitrator did not make that finding and as a result had to espouse an appropriate remedy after finding there was not just cause for termination." Dkt. # 33, at 4.

The record shows that the parties agreed to present two issues to the arbitrator. The transcript from the arbitration hearing shows that the arbitrator asked the parties to clarify the issues at the beginning of the hearing, and the parties agreed that the following two issues were being presented to the arbitrator:

> Mr. Plumb: The employer would propose whether this arbitration is timely as the initial issue to be determined by the arbitrator and that is an arbitrability issue. As a secondary issue, if the arbitrator finds it's timely, whether Mr. Byassee's termination was for just cause.
>
> The Arbitrator: Fine. Union?
>
> Mr. Robertson: I would agree to that.

14

Dkt. # 23-1, at 6. In its opening statement, counsel for the Union stated that the two issues before the arbitrator were "the issue of timeliness of the grievance and whether Kerry Byassee was terminated for just cause." Dkt. 23-9, at 5. In its post-hearing brief, the Union interjected the issue of the appropriateness of the remedy, but the issue of remedy would arise only if the arbitrator concluded that Byassee was disciplined without just cause. Dkt. # 25-1, at 1. Based on the Union's admission to the Court and the parties' statements during the arbitration proceedings, it is clear that the parties did not intend for the arbitrator to modify the level of discipline if she determined that PSO had "just cause" to discipline Byassee.

Contrary to the Union's assertion, the arbitrator expressly found that PSO had just cause to discipline Byassee. The arbitrator wrote:

> In this case, it has been established that the Grievant (1) failed to follow the direct and valid work order of his supervisor not to leave wire out at [Quail Run], and (2) connected electrical service at the MLK address after being instructed not to. The Grievant's misconduct was both "willful and deliberate," representing a repudiation of his supervisor's authority and, thereby, constituting insubordination and <u>providing "just cause" for the imposition of disciplinary action</u>.

Dkt. # 25-3, at 9 (emphasis added). She subsequently determined that PSO should not have terminated Byassee, but she reiterated that PSO had just cause to discipline Byassee:

> After careful consideration of the evidence and arguments of the parties, and based on the reasons set out above, together with the fact that Grievant is a long term employee, <u>although the Company has established that it [had] just cause to issue disciplinary action against the Grievant</u>, the penalty of removal is too severe and should, under the circumstances of this case, be reduced to a Disciplinary Suspension.

Id. at 11 (emphasis added). The arbitrator's decision leaves no doubt that she determined PSO had just cause to discipline Byassee, but she ordered Byassee's reinstatement on a completely separate determination that the remedy of termination was too severe. The Union argues that the arbitrator

15

resolved the just cause issue in favor of the Union and against PSO, but this is clearly not the case. See Dkt. # 30, at 7 ("In her award, the Arbitrator answered the first question in the affirmative and the second question in the negative."); Dkt. # 33, at 4 ("[PSO] asserts the parties did not agree to grant the right to modify the level of discipline, once she found just cause. The aforementioned statement would be true had the arbitrator found just cause for termination."). Under the arbitrator's own statement of the issues, she had no authority to modify the level of discipline once she determined that just cause existed, because she could consider the remedy issue only if she ruled against PSO on the issue of just cause. Dkt. # 25-3, at 3 ("If so, did the Company have just cause to issue the Grievant the Notice of Termination on April 13, 2006? If not, what is the proper remedy?) (emphasis added).

Based on the arbitrator's finding that PSO had just cause to discipline Byassee, she completely resolved the issues before her and she had no authority to adjust the disciplinary sanction selected by PSO. There is no indication of an implied agreement to expand the issues before the arbitrator and, in fact, the Union has agreed that the arbitrator lacked authority to modify the level of discipline if she found just cause to discipline Byassee. Dkt. # 30, at 7; Dkt. # 33, at 4. The arbitrator exceeded her authority by considering an issue that the parties did not agree to arbitrate, and this is an appropriate basis to vacate an arbitration award. United Food & Commercial Workers, Local Union No. 7R v. Safeway Stores, Inc., 889 F.2d 940, 947 (10th Cir. 1989); Retail Store Emp. Union Local 782 v. Sav-on Groceries, 508 F.2d 500, 502 (10th Cir. 1975). The arbitrator's decision did not draw from the essence of the parties' agreement to arbitrate Byassee's grievance, and it should be vacated.

Further, on the merits of the remedy issue, the arbitrator exceeded her authority to modify the level of discipline after finding that PSO had just cause to discipline Byassee. The CBA expressly provided that PSO retained "[t]he right to discipline, suspend, or discharge employees for just cause." Dkt. # 24-6, at 6. The unambiguous language of the CBA grants PSO discretion to fashion a disciplinary remedy once it finds just cause to discipline an employee. The arbitrator reviewed the various disciplinary sanctions against Byassee and found that they amounted to nothing more that a "slap on the wrist." Dkt. # 25-3, at 11. The arbitrator concluded that Byassee engaged in "repeated and continued egregious misconduct," but PSO's system of progressive discipline lulled Byassee into a false sense of security. Id. Federal courts routinely vacate arbitration awards when an arbitrator reinstates an employee after finding the employer had just cause to discipline an employee. Apache Bohai Corp. LDC v. Texaco China BV, 480 F.3d 397, 403 (5th Cir. 2007) ("If an arbitrator is limited to determining whether an employer showed proper cause for dismissal, and authority to determine discipline is either vested in the company or is non-discretionary, the arbitrator exceeds his powers by fashioning an alternative discipline."); 187 Concourse Assoc. v. Fishman, 399 F.3d 524, 527 (2d Cir. 2005) (arbitrator lacked authority to fashion alternative disciplinary sanction after finding employer had just cause to discipline employee); Poland Spring Corp. v. United Food & Commercial Workers Int'l Union, AFL-CIO-CLC, Local 1445, 314 F.3d 29, 34 (1st Cir. 2002) ("This Court has long held that once an arbitrator finds that an employee has committed an act specifically listed in the collective bargaining agreement as providing just cause for termination, the arbitrator is not free to fashion a separate remedy apart from the one provided by the parties' agreement."). In this case, the arbitrator had authority to modify the disciplinary sanction only if she found that PSO lacked just cause for disciplining Byassee. The arbitrator's

17

decision that PSO had just cause to discipline Byassee should have concluded her review of Byassee's grievance and, by proceeding beyond the limits of her authority, she abused her authority and "dispense[d] [her] own brand of industrial justice." LB& B Assoc., Inc., 461 F.3d at 1197.

## IV.

Based on the Court's conclusion that the arbitrator's decision to reinstate Byassee did not draw from the essence of the parties' agreement, the Court must vacate the arbitrator's award to the extent it requires PSO to reinstate Byassee. The arbitrator's finding that PSO had just cause to discipline Byassee required her to uphold Byassee's termination and deny his grievance in its entirety. The arbitrator resolved all of the issues presented to her, and there is no need to remand the case to the arbitrator for further review of any issue.

**IT IS THEREFORE ORDERED** that the arbitrator's decision is **confirmed** as to arbitrability and just cause for discipline, and **vacated** to the extent that it required PSO to reinstate Byassee. Defendant's motion to confirm arbitration award (Dkt. # 16) is **moot**. A separate judgment is entered herewith.

**DATED** this 3rd day of March, 2008.

*/s/ Claire V. Eagan*
CLAIRE V. EAGAN, CHIEF JUDGE
UNITED STATES DISTRICT COURT